IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2013 SEP 27  PM 3: 09

CLERK U.S. [illegible]
WESTE[illegible]
BY: _____ KKC

| | | |
|---|---|---|
| DENNIS PATSCHKE AND | § | |
| SHIRLEY PATSCHKE, | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CAUSE NO. A-11-CA-880-LY |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| DEFENDANT. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BE IT REMEMBERED that on January 14, 2013, the court called the above styled and numbered cause for bench trial. Plaintiffs Dennis Patschke and his wife, Shirley Patschke appeared in person and by attorney; Defendant United States of America appeared by designated representative and by attorney. All parties announced ready for trial. The parties concluded their presentations of evidence on January 16, 2013. The court allowed the parties to submit charts and outlines regarding damages and, on February 11, 2013, the court heard the parties' closing arguments.[1] Having carefully considered the pleadings, the parties' stipulations, exhibits, trial testimony, arguments of counsel, and the applicable law, the court concludes that the United States is liable to Dennis and Shirley Patschke for damages in the amount of $590,039. In so deciding, the court makes the following findings of fact and conclusions of law, holding, in summary, that Alfred Ralph Steahr, Jr., who was operating his personal vehicle in the course and scope of his employment

---

[1] The parties' closing briefing includes: Plaintiffs' Economic Damages, the parties' Joint Submission of Life Care Plan Comparison, and Defendant's Submission of Damage Elements, each filed January 30, 2013. Additionally, the United States filed Defendant's Objections to Plaintiffs' Economic Damages, or in the Alternative, for Consideration of Defendant's Response Thereto on February 6, 2013. The Patschkes filed Plaintiffs' Response to Defendant's Objections to Plaintiffs' Economic Damages on February 8, 2013. The court denied the objections, but granted the request that the court consider Defendant's response. The court has considered all posttrial filings in making these findings and conclusions.

with the United States Postal Service, and Dennis Patschke were proportionately responsible–Steahr to the extent of 60%, and Patschke to the extent of 40%– for their July 3, 2009 collision,[2] which occurred on County Road 113 in Lee County, Texas and proximately caused injuries to Dennis Patschke, resulting in damages to Dennis and Shirley Patschke.[3]

### Venue and jurisdiction

This court's jurisdiction arises under the Federal Tort Claims Act. *See* 28 U.S.C. §§ 1346(b), 2671-80 (the "Act"). The Patschkes satisfied the administrative prerequisites to suit and seek recovery for damages incurred as a result of the alleged negligence of the United States through Steahr.[4] *See* 28 U.S.C. §§ 2401(b), 2675. Under the Act, a plaintiff may recover damages where the United States, if a private person, would be liable in accordance with the law of the state where the act or omission occurred–here, Texas. *See* 28 U.S.C. § 1346(b); *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003); *Lebron v. United States*, 279 F.3d 321, 326 n.4 (5th Cir. 2002).

---

[2] In a few instances, the Patschkes' complaint refers to an automobile collision that occurred "on or about April 23, 2010" in Lee County, Texas. The court finds the references to April 23 to be inadvertent typographical errors.

[3] In making the following findings of fact, the court has considered the record as a whole. The court observed the demeanor of the witnesses and has carefully weighed that demeanor and the witnesses' credibility in determining the facts of this case and drawing conclusions from those facts. All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed. Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

[4] By their administrative claims, Dennis Patschke sought $2,814,021.24 and Shirley Patschke sought $864,021.24 in damages. The United States denied the claims and the Patschkes timely filed this action. Any damages awarded are limited to and may not exceed the amount of the sum certain demanded by the Patschkes in their administrative claims. *See* 28 U.S.C. § 2675(b).

Venue is proper in the Austin Division of the Western District of Texas because the United States is the defendant and the collision occurred and the Patschkes reside in the division. *See* 28 U.S.C. §§ 1391(e), 1402(b).

**Stipulations**

On July 3, 2009, at 1:57 p.m., Patschke, driving a 2007 gray Chevrolet Silverado pickup and Steahr, driving a 2001 red Chevrolet 1500 pickup, collided on County Road 113 in Lee County, Texas. Patschke and Steahr were each traveling alone. At the time of the collision, the weather was clear and sunny and the road was level and dry. County Road 113, at the site of the collision, accomodates two lanes of traffic, one in each direction. Both drivers were familiar with the road. The legal speed limit at the location of the collision is 40 miles per hour.

At the time of the collision, Steahr was working in the course and scope of his employment with the United States Postal Service as a rural mail carrier in Giddings, Texas, delivering mail in his personal truck on his assigned route. Steahr's truck is fitted with a yellow hazard light bar on the rooftop. The rooftop light bar was turned on at the time of the collision. Steahr's truck also has a sign attached to the tailgate, "U.S. MAIL, WATCH FOR STOPS." Attached to the passenger-side door is a "U.S. MAIL" sign. The interior of Steahr's truck is modified with a redundant steering wheel installed on the right-hand side to allow Steahr to drive and deliver mail from the right side of the truck. The interior is also fitted with a right-side noncanceling turn signal that allows Steahr to activate the vehicle's turn signals when driving from the right side of the truck. Upon completing a turn while driving on the right side with the turn signal on, Steahr must manually cancel the signal.

3

Steahr began working for the Postal Service in July 1982 and continues to work for the Postal Service today.  Steahr has had the same delivery route since February 1992.

Patschke worked as a carpenter and was also trained as a basic emergency medical technician.  At the time of the collision, Patschke was traveling from his home in Lincoln, Texas, to a carpentry job in LaGrange, Texas.[5]  Patschke and Steahr collided, with the right side of Patschke's truck impacting the front left fender of Steahr's truck.  Patschke's truck continued on, hitting a fence post and stopping ultimately with the front bumper against a tree.  Patschke's driver's-side air bag deployed; Steahr's air bag did not.  Emergency assistance arrived soon after the collision. Patschke was transported by ambulance to Brackenridge Hospital in Austin, Texas for treatment of an ankle injury.  Steahr was uninjured and declined treatment.

At Brackenridge, Patschke was admitted for a right-ankle fracture.  On July 4, Dr. Mark Dalton, an orthopedic surgeon, performed surgery on Patschke's ankle; on July 6, Dalton performed a second surgery on Patschke's ankle; and on July 7, Patschke was discharged from the hospital with hardware in his ankle joint.

On September 8, 2010, Patschke was admitted to Seton Medical Center hospital in Austin with an acute infection around the ankle-joint hardware.  Due to the severity of the infection, Patschke was placed on a ventilator in the intensive-care unit of the hospital.  Dalton performed two surgeries during Patschke's hospital stay, which included an attempt to remove the hardware, control

---

[5] At the time of the collision, Patshcke was 52 years old and Steahr was 58 years old.  At the time of trial, Dennis Patschke was 55 and Shirley Patschke was 49.  The Patschkes were married May 29, 1990, and have two daughters.  One is 19 years old and attends Texas State University.  The other is 16 years old and attends public school in Giddings.

the infection, and install a vacuum assisted device for wound closure.[6]  Patschke was in Seton

Medical Center until September 27, 2010, when he was transferred to Cornerstone Hospital in Austin

for continued intensive intravenous antibiotics, wound care, and physical therapy.  On October 26,

2010, Patschke was transferred to St. David's Rehabilitation Hospital in Austin for intensive

rehabilitation and discharged to go home on November 10, 2010.  Patschke last saw Dalton in 2011.

### *At trial*

Steahr testified that he had the flashing rooftop lights on at the time of the collision.  All of

his truck's wheels were on the roadway, and his turn signal on, as he was preparing to make a left

turn into a private driveway.  Also, when driving from the right side of the truck, as Steahr was when

the collision occurred, Steahr is unable to employ the truck's left exterior mirror; that mirror is

unusable in such instance.   As Steahr was turning left toward the private drive, the collision

occurred.  Steahr testified that he never saw Patschke approaching from behind.

Patschke testified that he was traveling on County Road 113 from State Highway 21 toward

Giddings.  He had just crossed the Nails Creek bridge when he saw Steahr pull out of a driveway and

turn toward Giddings.  Patschke recalled that Steahr pulled slightly off the road to the right and was

driving slowly, which Patschke considered a courtesy by Steahr and was Steahr's way of indicating

that Patshcke should pass Steahr on the left.  Patschke proceeded to pass Steahr on the left, speeding

up a bit as he passed Steahr, at which time Steahr turned left into the road.  Patschke could not stop

and drove into Steahr's truck.  Patschke reported that he was traveling about 45 miles per hour.

Patschke said that he attempted to avoid colliding with Steahr's truck, but Patschke's truck hit

---

[6] Although the parties' stipulations refer to three surgeries in September 2010, at trial the
parties corrected the number of surgeries to two.

Steahr's truck's front left side.  Patschke's air bag deployed and his truck continued traveling left across the road, through a roadside ditch, and was stopped by a fence corner post and cedar trees. Patschke never observed a turn signal from Steahr's truck.

Ralph Zoch was Postmaster in Giddings at the time of the collision; he retired in July 2012. Zoch testified that left turns in modified vehicles are extremely hazardous.  He stressed that he wanted his rural mail carriers to use their mirrors to ensure no one is behind when making a left turn.

Robert Thorp, a trooper for 38 years with the Texas Department of Public Safety and stationed in Giddings, investigated the collision.  Thorp, received accident-reconstruction training in the 1980s and reconstructs, on average, 20 automobile accidents per month.  Speed at the time of collision is an important factor and, in approximately 5% of the cases, speed is unknown at the time of a collision, and Thorp has to reconstruct speed.  Here, Thorp measured the skid marks at the scene of the collision and submitted a report of his findings.  Included with his report were written statements by Patschke and Steahr and Thorp's photographs of the scene.

Thorp's opinion is that "excessive speed" was not a factor in the collision, and Patschke's speed was not unreasonable.  Although no speed calculation was done on Patschke's truck, based on drag factors of the road and and a 90-foot skid mark, Thorp believes that Patschke's speed at the time of the collision was within the 40-mile-per-hour posted speed limit.  Thorp opined that Patschke could have slowed down upon seeing Steahr's flashing lights, but instead Patschke chose to pass. Thorp concluded from his investigation that nothing occurred that would have indicated to Patschke that passing Steahr was unsafe.  Thorp concluded that the cause of the collision was Steahr's unsafe left turn.

Bill Nalle, an accident reconstructionist, testified on the Patschkes' behalf. Nalle reviewed much of the relevant materials related to the collision, including the report of John Eftakhar, the United States' accident reconstructionist. Nalle concluded that the left exterior mirror is the most important mirror to have functioning when being passed and is extremely important for a right-side-drive delivery vehicle traveling on the right side of a road. Nalle concluded that when Steahr had his truck modified for rural-mail delivery, the left-door exterior mirror should have been modified or augmented with an auxiliary mirror. Also, Nalle noted that photos taken at the scene of the collision show that Steahr's right-side exterior mirror was folded flat against the door of the truck, so that Steahr's only functioning mirror at the time of the collision was the mirror inside the truck.

Nalle concluded that based on the skid marks, Steahr's right-side wheels must have been on the grass adjacent to the right side of the road, in order for Steahr to make the left turn and for his truck to actually reach the collision-impact point. Further, Nalle concluded that if all four wheels of Steahr's truck were on the roadway as Steahr stated, there would not have been space remaining on the narrow road for Patschke to pass on Steahr's left. Photographs taken at the time of the collision reflect no tire marks in the grass. Nalle, however, found that to be of no consequence, because the ground was extremely dry.

Nalle concluded that Steahr was traveling in a southeasterly direction at a relatively slow rate of speed. Steahr pulled to the right, about three feet off the road, in preparation for making a left turn into a driveway located across the road. Nalle concluded that, to an approaching motorist, Steahr's action would look like a courtesy for an approaching motorist to pass; instead Steahr made an improper and unsafe turn directly into Patshke's path. Nalle estimated that Patschke was traveling between 42 and 46 miles per hour at the time of the collision. Nalle concluded that Steahr's unsafe

left turn that was the sole cause of Patschke's truck hitting Steahr's truck and Patschke's being forced off the road.

Finally, Eftekhar testified that he had reviewed the relevant materials related to the collision and Nalle's reconstruction report.  Eftekhar disagrees with Nalle's methods and techniques in reconstructing the collision.  Eftekhar notes that Patschke saw Steahr coming out of a driveway on the east side of the road and turning south and that Patschke knew it was the rural postman based on the yellow flashing lights mounted on the rooftop of the truck.  Eftekhar noted that Nalle concluded that Patschke was traveling at 42 to 46 miles per hour and Patschke said he was traveling 45 miles per hour.  Eftekhar concludes that Patschke was traveling between 49 and 53 miles per hour. Eftekhar is of the opinion that Thorp grossly underestimated Patschke's speed as being within the 40-mile-per-hour posted limit.  Eftekhar concludes that Patschke's speeding contributed to the collision. Eftekhar ultimately opines that the collision could have been avoided, and Patschke could have stopped and completely avoided the collision, if Patschke had been traveling at 40 miles per hour, and Patschke failed to control his speed, failed to maintain a proper lookout as he approached Steahr's slow-moving vehicle, with the activated rooftop lights and left turn signal, and attempted to pass Steahr to the left in an unsafe manner.  Eftekhar also noted that Steahr stated that he never saw Patschke approaching and Eftekar is of the opinion that Steahr, with a proper lookout and using proper mirrors, should have been able to see Patschke approaching from behind.

### *Allegations*

The Patschkes allege that Steahr negligently turned left in front of Dennis Patschke as Patschke was passing Steahr, causing the collision that resulted in their damages.  The Patschkes allege that Steahr failed to yield the right of way to Dennis Patschke when Steahr turned left toward

a private driveway; failed to keep a proper lookout; and failed to maintain proper and safe control of the vehicle.

As a direct and proximate result of Steahr's negligence, Dennis Patshcke alleges he received serious and permanent injuries and damages, including but not limited to, injuries to his ankle. Patschke has undergone seven surgeries and been hospitalized on five occasions for a total of 72 days since the collision, and each of these events is related to the July 3, 2009 collision caused solely by Steahr's negligence.  Patschke's permanent injuries will cause debilitating chronic pain and mental suffering for the remainder of his life.  The injuries Patschke sustained in the collision severely limits his ability to perform activities of daily living.  Further, Patschke's injuries will severely limit his ability to earn a living in the future.  Finally, Patschke will likely need future surgeries and medical treatment.  Shirley Patschke seeks damages for loss of household services she sustained in the past and in the future as a result of the collision.[7]

The United States responds that in light of all of the conditions and circumstances, if Patschke had acted reasonably upon observing Steahr's slow-moving truck, with the rooftop-mounted flashing yellow lights engaged, the collision would have been avoided.  It was Patschke who acted unreasonably and negligently by driving too fast–over the 40-mile-per-hour speed limit–and that if Patschke had been driving more slowly, Patschke would have had enough time to avoid the collision.  The United States argues that the collision occurred without any fault by Steahr.

The United States alleges that Patschke was contributorily negligent by failing to operate his truck in a safe and prudent fashion.  Specifically the United States argues that Patschke failed to keep

---

[7] Although the complaint seeks damages on Shirley Patschke's behalf for loss of consortium, past and future, no evidence was presented at trial supporting this claim for damages.

a proper lookout by traveling above the posted speed limit or at a speed greater than reasonable and prudent under the circumstances; Patschke failed to keep a proper lookout and attempted a passing maneuver that was unsafe; Patshcke failed to use a signal or warn Steahr of Patschke's intention to pass Steahr; and Patschke failed to slow his speed and timely apply his brakes, which would have avoided the collision.  The United States argues that it was Patschke's actions that  proximately caused and contributed to any injuries or damages sustained by the Patschkes.

Alternatively, the United States argues that if the court finds that Steahr acted negligently, it was Patschke's negligence in driving at a speed greater than reasonable and prudent under the circumstances, Patschke's failing to keep a proper lookout in attempting a passing maneuver that was unsafe, Patschke's failing to signal or warn Steahr of Patschke's intention to pass Steahr, or Patschke's failing to timely apply his brakes to avoid the collision that was the sole proximate cause of and contributed to any injuries or damages sustained by the Patschkes.  Therefore, the United States argues the Patschkes are barred from any recovery.

The United States argues that if the court determines that the Steahr was negligent, the Patschkes' damages should be proportionately reduced according to federal law and Texas state-law theories of comparative responsibility or contribution.  *See e.g.*, 28 U.S.C. §§ 2674, 2678; 31 U.S.C. § 1304; Tex. Civ. Prac. & Rem. Code Ann. §§ 32.001-.003; 33.001-.003 (West 2008).

*Law*

Under the Act, Texas law applies.  *See* 28 U.S.C. § 1346(b); *Quijano*, 325 F.3d at 567.  To determine state-law questions, federal courts look to final decisions of the highest court of the state. *See St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999). Where there is no ruling by the state's highest court, it is the duty of the federal court to determine,

as best it can, what the highest court of the state would decide. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992).

The elements of a Texas negligence action are "the existence of a duty, a breach of that duty, and damages proximately caused by the breach." *West Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *see also Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000). To establish liability in a negligence action, a plaintiff must prove the existence of a duty and a violation of such duty. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). A person owes a duty of ordinary and reasonable care to prevent injury to others. *Hayes v. United States*, 899 F.2d 438, 444 (5th Cir. 1990) (applying Texas caselaw in action filed pursuant to Act). Ordinary care is that degree of care that would be exercised by a person of ordinary prudence under the same or similar circumstances. *See Mount Pleasant I.S.D. v. Lindburg*, 766 S.W.2d 208, 213 (Tex. 1989).

Proximate cause has two components–cause in fact and foreseeability. *HIS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Cause in fact means that the negligent act was a substantial factor in bringing about the injury, and without the act, the harm would not have occurred. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). Although proximate cause may be shown by circumstantial evidence, it cannot be established by mere conjecture or guess; it must be proved by evidence of probative force. *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 21 (Tex. 1987); *Summers v. Fort Crockett Hotel, Ltd.*, 902 S.W.2d 20, 25 (Tex. App.–Houston [1st Dist.] 1995, writ denied). The test for the second component, foreseeability, is whether a person of ordinary intelligence would have anticipated the danger his negligence creates. *Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 477 (Tex. 1995).

The plaintiff bears the burden of proving the defendant's negligence by a preponderance of the evidence. *See Burlington-Rock Island R.R. Co. v. Ellison*, 167 S.W.2d 723, 726 (Tex. 1943); *see also Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 462-63 (Tex. 1992) (Cornyn, J., dissenting) ("It is axiomatic that the plaintiff in a negligence case bears the burden of establishing each element of his or her cause of action by a preponderance of the evidence.") (citing W. Prosser & W. Keeton, *The Law of Torts* § 38 (3d ed. 1984)).

The United States argues that Patschke's comparative fault either bars recovery or requires a commensurate reduction of damages, if any. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 33.001-.003 (West 2008). In Texas, a plaintiff may not recover damages if the plaintiff's percentage of fault is greater than 50 percent. *Id.* at § 33.001; *Perez v. United States*, 830 F.2d 54, 57 (5th Cir. 1987) (applying Texas law). However, if the plaintiff's percentage of fault is 50 percent or less, the plaintiff's recovery is diminished by that percentage. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.012(a) (West 2008); *Perez*, 830 F.2d at 57.

In determining comparative fault in a negligence action, there must be a preliminary finding that the plaintiff was in fact contributorily negligent. *See Kroger Co. v. Keng*, 23 S.W.3d 347, 351 (Tex. 2000). Contributory negligence contemplates an injured person's failure to use ordinary care in regard to his own safety and requires proof that the plaintiff was negligent and that the negligence was the proximate cause of the plaintiff's injuries. *See Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 520 (Tex. 1978); *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex. 1988).

Every motorist has a duty to keep a proper lookout. *Lynch v. Ricketts*, 31 S.W.2d 273, 275 (Tex. 1958). A proper lookout requires the motorist "to see what a person in the exercise of ordinary care and caution for the safety of herself and others would have seen under like circumstances" and

12

to take "such steps to guard against accidents which the conditions observed by her would necessarily indicate to be necessary." *Lopez v. City Towing Assocs., Inc.*, 754 S.W.2d 254, 263 (Tex. App.–San Antonio 1988, writ denied). "Although not required to anticipate negligent or unlawful conduct on the part of others, [a motorist] is not entitled to close her eyes to that which [is] plainly visible and which would have been observed by a person of ordinary prudence similarly situated." *Lynch*, 31 S.W.2d at 275.

***Liability***

        Upon considering all of the evidence, the court gives weight to the fact that Eftekar and Nalle testified that the collision would not have occurred if either Steahr or Patschke or both kept a proper lookout. The court finds both witnesses' testimony credible. Steahr testified that he never saw Patschke. However, had Steahr fitted his truck with a useable left-side exterior mirror or kept a proper lookout by checking his interior rear-view mirror before turning left, the likelihood is he would have seen Patschke approaching from behind. Also, had Patschke slowed down when he saw Steahr's truck with flashing yellow lights, rather than speeding up to pass Steahr on the left, the collision could have been avoided. The court finds from a preponderance of the evidence that both Steahr and Patschke failed to maintain a proper lookout in operating their vehicles and that Patschke failed to control his speed upon approaching Steahr's truck. Each was negligent and their negligence was a proximate cause of the July 3, 2009 collision.

        In making these findings, the court rejects the United States' argument that the collision occurred without any fault of Steahr and also rejects the argument that Patschke was solely responsible for collision. Likewise, the court rejects Patschke's argument that Steahr was solely responsible for the collision. The court finds and concludes that Patschke and Steahr demonstrated

a degree of negligence in this action and that the July 3, 2009 collision would not have occurred if either of the two individuals had not behaved in a negligent manner.  Based upon these findings and conclusions, the court proceeds to determine proportionate responsibility under Texas law.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.003.  Under Texas principles of proportionate responsibility, the court finds from a preponderance of the evidence and concludes that the appropriate verdict is one which allocates fault 60% to Steahr and 40% to Patschke.  With this finding and conclusion, the United States will therefore be liable for 60% of the damages suffered by the Patschkes.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 33.001, .012(a).

***Damages***

There is no dispute that the collision caused Dennis Patschke injuries.  However, there is a great disparity in the parties' calculations of the Patschkes' damages sustained in and attributable to the collision.  The Patschkes' witnesses at trial included Jacqueline Kelly, a physician, attorney, and certified life planner.  Kelly prepared a complete assessment of Dennis Patschke, including his medical and work history, and consulted with Patschke's treating physicians.  Also, Dr. Carl Hansen, a vocational expert, testified about the impact the injuries Patschke sustained in the collision have had on his earning capacity, both past and future, as well as opinions about the loss of household services the Patschkes sustained since the collision and are likely to sustain in the future.  Dr. George Berry, an economist, testified about the economic losses, past and future, including future medical expenses, future lost earning capacity, future household services, and future physical pain and mental anguish suffered by Patschke as a result of the collision.

The United States presented witnesses who testified with differing views about the damages the Patschkes sustained that are related to the collision.  Emma Vasquez, a licensed life-care planner

14

and rehabilitative consultant and vocational-rehabilitation counselor provided testimony about anticipated care Patschke would require in the future and provided a vocational analysis for him. J. Brannan Smoot, a physician, board certified in orthopedic surgery who specializes in surgery of the foot and ankle, provided testimony about Patschke's medical condition before and after the collision, along with causation, and medical treatment related to the injuries Patschke sustained in the collision. Also, Stephen Horner, an economist testified with his opinions of Patschke's economic losses as a result of the collision.

### Past medical expenses

To recover for past medical expenses, a plaintiff must prove that the expenses were necessary to treat the injury, were reasonable in amount, and the expenses were paid or incurred by or on behalf of the plaintiff. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.0105 (West 2008).

The parties stipulate that $232,852.49 of the past medical charges reflected in the Blue Cross Blue Shield Explanation of Benefits were reasonable and necessary for the services performed. The United States, however, does not agree that all of the services provided were related to the injuries Patschke suffered in the collision. Additionally, with regard to past medical expenses, Kelly testified that additional charges of $7,594.56 for wound care by KCI, USA were reasonable and necessary for the injuries sustained by Patschke in the collision.

The court, having considered all of the evidence, finds from a preponderance of the evidence that the stipulated amount of $232,852.49 represents past reasonable-and-necessary expenses for medical services performed that were related to Patschke's injuries sustained in the collision, and that the additional charges of $7,594.56 by KCI, USA, were reasonable-and-necessary expenses for wound care for Patschke related to Patschke's injuries sustained in the collision. The court

concludes that the Patschkes incurred the sum of $240,447.05 as past reasonable-and-necessary medical expenses.

***Future medical expenses***

To recover for future medical expenses, Patschke must show there is a reasonable probability that expenses resulting from the injuries he sustained in the July 3, 2009 collision will be necessary in the future. *See Pilgrim's Pride Corp. v. Cernat*, 205 S.W.3d 110, 121 (Tex. App.–Texarkana 2006, pet. denied). To make this showing, the Patsckes must provide evidence of: (1) a reasonable probability that Patshcke will incur future medical expenses, and (2) the reasonably probable amount of the future medical expenses. *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.–Houston [1st Dist.] 1999, pet. denied). The fact-finder may decide the amount of future medical expenses based on: (1) the injuries suffered; (2) the medical care rendered before trial; (3) the injured party's progress toward recovery under the treatment received; and (4) the condition of the injured party at trial. *Id.*

The parties agree that Dennis Patschke will incur future medical expenses related to the collision. The parties disagree as to the reasonably probable amount of the future medical expenses. The Patschkes argue that based on Kelly's calculations, future medical expenses, reduced to present value, range from a low of $380,788 to a high of $490,927. The United States disagrees and argues that based on Horner's report and Vasquez's life-care plan, reduced to present value, Patschke will likely incur $35,557 in future medical expenses an additional $39,193 as potential future medical costs.

In reviewing the evidence, included in Kelly's calculations are provisions for future medical care for Dennis Patschke's knee. There was testimony at trial that Dennis Patschke had developed

16

arthritis in his knee unrelated to the collision. Based on this evidence, the court will not award future medical expenses related to treatment for Patschke's knee. Accordingly, the court deducts from each of Kelly's proposals $51,022, which results in her lower amount of future medical expenses as being $329,766 and her higher amount to be $439,905.

The court finds that the United States' calculation of $35,557 as Patschke's future medical expenses and the additional potential future medical expenses of $39,193 are unsupported by the evidence and unreasonably low. The court also finds Kelly's modified higher calculation of $439,905 as Patschke's future medical expenses to be unsupported by the evidence and is unreasonably high. Based on the preponderance of the evidence, and having considered Dennis Patschke's injuries, the medical care he received before trial, his progress under the treatment he has received, and his condition at trial, the court finds there is a reasonable probability that Dennis Patschke will incur future medical expenses related to the collision and that the reasonably probable amount is $329,766.

### Past and future loss of household services

"Services" refers to the performance of household and domestic duties. *See Whittlesey v. Miller*, 572 S.W.2d 665, 666 n. 2 (Tex. 1978). When claiming loss of services of a spouse, the plaintiff must offer evidence of the services the injured spouse can no longer perform. *See Six Flags Over Tex., Inc. v. Parker*, 759 S.W.2d 758, 762 (Tex. App.–Fort Worth 1988, no writ).

The Patschkes argue that based on Shirley Patschke's testimony and Berry's report, before the collision Patschke provided an average of 20 hours a week of household services and eight hours a week after the collision, resulting in a loss of 12 hours of work a week. Berry calculates that at the time of trial, approximately three and a half years had passed since the collision and the total for past

17

loss of household services was $15,834.  The United States calculates two numbers, the first of

$2,638, based on a loss of two hours per week and a second of $13,191 based on a loss of 10 hours

per week.  The court having considered the evidence, finds from a preponderance of the evidence

that the Patschkes sustained $15,834 in loss of household services of Dennis Patschke due to the

collision.  The court finds from a preponderance of the evidence that Berry's calculation of $102,240

is the present value of the amount of future loss of household services the Patschkes will sustain due

to the collision.

**_Past loss of earnings_**

Loss of earning capacity is the plaintiff's diminished ability to earn a living during the period

between the injury and the date of trial.  *Bituminous Cas. Corp. v. Cleveland*, 223 S.W.3d 485, 491

(Tex. App.–Amarillo 2006, no pet.).  Loss of earnings is the loss of actual income because of the

inability to perform a certain job that the person held before the injury.  *Koko Motel, Inc. v. Mayo*,

91 S.W.3d 41, 51 (Tex. App.–Amarillo 2002, pet. denied).

To support an award of damages for loss of past earning capacity, the plaintiff must introduce

evidence sufficient to allow the fact-finder to reasonably measure earning capacity before injury in

monetary terms.  *Bituminous Cas.*, 223 S.W.3d at 491.  A plaintiff may include evidence of past

earnings, time missed from work, and any other factors that illustrate the plaintiff's reduced ability

to perform work in the past.  *See Ryan v. Hardin*, 495 S.W.2d 345, 350 (Tex. App.–Austin 1973, no

writ).  Additionally, the loss or earning capacity must be in the form of a net loss after reduction for

income-tax payments or unpaid tax liability under federal income-tax law.  *See* Tex. Civ. Prac. &

Rem Code Ann. § 18.091(a) (West 2008).

The Patschkes contend that Dennis Patschke's total earnings for calendar year 2008 was $27,206, reduced by a tax rate of 10% (his actual tax rate paid), resulting in net income of $24,485. Using 2008 as the base for the loss calculation for the calendar years 2009 and 2010, Patschke's actual after-tax earnings are deducted from the $24,485 amount. The Patschkes argue that Dennis Patschke's past loss of earnings due to the collision are $69,548. The United States contends that the proper sum for Patschke's loss of earnings is $47,616. The court finds from a preponderance of the evidence that the sum of $69,548 is the amount of loss of earnings Patschke sustained due to the collision.

### Loss of future earning capacity

Loss of future earning capacity is a plaintiff's diminished capacity to earn a living after the trial. *Bituminous*, 223 S.W.2d at 491. Because the amount of money the plaintiff might earn in the future is always uncertain, the fact-finder has considerable discretion in determining the amount. *See McIver v. Gloria*, 169 S.W.2d 710, 712 (Tex. 1943). To support an award of damages for loss of future earning capacity, the plaintiff must introduce evidence sufficient to allow the fact-finder to reasonably measure earning capacity in monetary terms. *Bonney v. San Antonio Transit Co.*, 325 S.W.2d 117, 121 (Tex. 1959). To support an award for loss of future eanring capacity, the plaintiff may introduce evidence of (1) past earnings; (2) the plaintiff's stamina, efficiency, and ability to work with pain; (3) the weaknesses and degenerative changes that will naturally result from the plaintiff's injury; and (4) the plaintiff's work-life expectancy. *Gilbreath v. Hathaway*, 108 S.W.3d 365, 367 (Tex. App.–Beaumont 2003, pet. denied).

Hansen's report opines that Dennis Patschke has a future earning capacity ranging from $0 to $8 per hour for 20 hours per week and that Patschke will work until the age of 70. Patschke

presents evidence of after-tax loss of earing capacity from age 60 to age 70.  The United States argues that based on its review of all relevant factors, Patschke can earn as much as he was making before the collision, therefore, the court should find Patschke suffered no damages for loss of future earning capacity.  The United States posits that Patschke will not work until age 70.

The court finds the portion of Hansen's report reflecting that Patshcke will be able to work half-time at $8 per hour until he is 70 years old persuasive.  Also persuasive in determining how long Patschke will continue to work is his family situation, particularly the ages and educational needs of his children.  The court finds from a preponderance of the evidence that Patschke has sustained a loss of future earning capacity in the amount of $225,564.

### Summary of damages and application of proportionate responsibility

The court finds that the Patschkes sustained the following damages, proximately caused by the July 3, 2009 collision:  (1) past medical expenses of $240,447.05; (2) future medical expenses of $329,766; (3) reduced to present value, past lost household services of $15,834, and future lost household services of $102,240; (4) reduced to present value, past loss of earnings of $69,548 and future loss of earnings of $225,564.

As the court concludes that Patshcke was 40% proportionately responsible for the July 3, 2009 collision, each of these damage amounts will be reduced by 40%.  Accordingly, the Patschkes will be awarded the following damages:  (1) past medical expenses of $144,268; (2)  future medical expenses of $197,860; (3) past lost household services of $9,500, and future lost household services of $61,344; (4) past loss of earnings of $41,729 and future loss of earnings of $135,338.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.012(a).

*Conclusion*

In accordance with the foregoing, the court concludes that Plaintiffs Dennis and Shirley Patschke shall recover from the Defendant United States of America the total sum of $590,039.

SIGNED this **26th** day of September, 2013.


LEE YEAKEL
UNITED STATES DISTRICT JUDGE

21